# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

INTERLEDA COMPANY,           )
                             )
Plaintiff,                   )
                             )        1:13-cv-356
      vs.                    )
                             )
ZHONGSHAN BROAD-OCEAN,       )
MOTOR CO., LTD.,             )
                             )
Defendant.                   )

## OPINION AND ORDER

This matter is before the Court on "Defendant's Motion and Memorandum of Law to Dismiss Plaintiff's Complaint on the Grounds of Lack of Personal Jurisdiction, Improper Venue, Forum Non Conveniens, Failure to State a Claim, and More Definite Statement," filed by Defendant, Zhongshan Broad-Ocean Motor Co., Ltd., on April 30, 2014.  (DE #14.)[1] For the reasons set forth below, the motion is **DENIED.**


BACKGROUND

Plaintiff, Interleda Company ("Interleda"), filed its Complaint on December 19, 2013.  (DE #1.)  Interleda amended its Complaint on January 8, 2014.  (DE #5.)  The

---

[1]  As noted below, Defendant was granted leave to amend its Motion to Dismiss because the first four pages were inadvertently left off of the original filing.  (See DE #21.)  The complete amended document was filed on May 2, 2014.  (DE #20.)

Amended Complaint lists the following claims: Count I - Breach of Contract against Zhongshan Broad-Ocean Motor Co., Ltd. ("BOMC"), and Count II - Violation of the Indiana Wholesale Sales Representative Commission Act (the "Act"). (*Id.* at 2-4.) In response to the Amended Complaint, BOMC filed the instant Motion to Dismiss on April 30, 2014, requesting dismissal based on Federal Rules of Procedure 12(b)(2), 12(b)(3), 12(e), 9(b), and the doctrine of *forum non conveniens*. (DE #14.) Subsequently, BOMC was granted leave to amend its Motion to Dismiss because the first four pages were inadvertently left off of the original filing. (See DE #21.) The complete amended document was filed on May 2, 2014. (DE #20.) Interleda filed its response on June 2, 2014. (DE #24.) BOMC filed its reply on July 16, 2014. (DE #32.)

DISCUSSION

*Facts*

Interleda is an Indiana corporation with its principal place of business located in Indiana. (Am. Comp., DE #5 ¶ 1.)[2] BOMC is a Chinese corporation with its principal place of business in Zhongshan, China. (*Id.* at ¶ 2.) BOMC

---

[2]  The Amended Complaint lists Interleda's principal place of business as Fort Wayne, IN. (Am. Comp., DE #5 ¶ 1.) Interleda later clarified that its current principal place of business is in Huntertown, IN. (Lou Aff., DE #25 ¶ 4.)

produces, manufactures, imports, sells, and distributes products for wholesale and conducts business in the Northern District of Indiana. (*Id.* at ¶¶ 3 & 14.) Specifically, on January 1, 2003, the parties entered into a Sales Agent Agreement (the "Agreement") wherein the parties agreed that Interleda would solicit business for the sale of BOMC's products to Interleda's exclusive customers, including those in Indiana. (*Id.* at ¶¶ 6-7, 16; see also Agreement, DE #5 pp. 6-8.) The Agreement states that Interleda's office is located in Indiana, while BOMC's office is located in China. (Agreement, DE #5, p. 6.) It includes the following clause:

> This Agreement shall remain in effect for a period of five (5) years. It will be considered automatically renewed for successive three (3) year terms unless notice of intent not to renew is given in writing by either party at least ninety (90) days prior to expiration of the then current term, in which case this Agreement shall be terminated as of the end of the then current term.

(*Id.* at 7.) The Agreement was renewed for successive terms through December 31, 2013. (Am. Comp., DE #5 ¶ 9.) However, on or about April 20, 2013, BOMC unilaterally terminated the Agreement, effective immediately, and refused to pay Interleda the compensation it was owed pursuant to the Agreement. (*Id.* at ¶¶ 10-11.)

3

According to the president and owner of Interleda, Richard Lou ("Lou"), he drafted the Agreement in Indiana and forwarded it to BOMC via email in late 2002 or early 2003. (Lou Aff., DE #25 ¶¶ 8-10.)[3] The parties did not engage in any additional negotiations once the email was sent. (*Id.* at ¶ 10.) Ultimately, the parties met at a hotel in Chicago, Illinois, and the Agreement was signed by Lou and the chairman of BOMC, Charles Lu ("Lu"). (*Id.* at ¶¶ 11-12; see also Agreement, DE #5 p. 8.) The Agreement as presented included a document entitled Schedule A, which identified several customers that Interleda would be expected to call upon to solicit sales for BOMC. (Lou Aff., DE #25 ¶ 15; see also Schedule A, DE #25 p. 9.) One of those customers was Dometic, which is located in Indiana. (*Id.*) At the time the Agreement itself was signed, Lou and Lu agreed that Schedule A would remain unsigned because the customer list was expected to grow and

---

[3] While a complaint does not need to include facts related to personal jurisdiction, if a defendant moves to dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff must then establish that jurisdiction exists. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citations omitted). When the court rules on such a motion based solely on written materials provided by the parties, a plaintiff "need only make out a *prima facie* case of personal jurisdiction. . . . In evaluating whether the *prima facie* standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (internal quotation marks and citations omitted). Therefore, the disputed facts (including the conflicting statements found within the parties' respective affidavits) have been resolved in favor of Interleda and have been presented as such throughout the instant motion.

change.  (Lou Aff., DE #25 ¶ 13.)  Schedule A was, in fact,
amended from time to time, and other customers from Indiana
were added to the list including Carrier, which has offices
and a large manufacturing facility in Indianapolis,
Indiana.  (*Id.* at ¶¶ 15, 17.)

As was understood by the parties when the Agreement
was signed, Lou spent a substantial amount of time calling
on customers and soliciting business for BOMC in Indiana.
(*Id.* at ¶¶ 14, 16.)  For example, Lou solicited business
from Carrier that included sales of BOMC's products to its
Indianapolis facilities, and by 2012, sales of BOMC's
products to those facilities had grown to more than $8
million annually.  (*Id.* at ¶¶ 17-18.)  Similarly, Lou spent
a substantial amount of time calling on Dometic at its
headquarters in LaGrange, Indiana and at its manufacturing
facilities in Elkhart, Indiana.  (*Id.* at ¶ 19.)  Lou
solicited business from Dometic that included sales of
BOMC's products that were shipped directly to Indiana;
those sales grew to $3 million annually by 2006.  (*Id.* at ¶
20.)  Throughout the duration of the Agreement, products
solicited by Interleda and sold by BOMC were shipped from
overseas to a warehouse located in Indianapolis, Indiana
and were then distributed to facilities in Indiana and
throughout North America.  (*Id.* at ¶¶ 21-22.)  BOMC paid

Lou his sales commissions via wire transfer to Lou's bank account at Wells Fargo Bank in Fort Wayne, Indiana. (*Id.* at ¶ 25.) Ninety-five percent of those transfers originated from BOMC's bank accounts in China or Hong Kong, although Lou did receive a small amount of cash payments while in China for travel expenses. (*Id.* at ¶ 26; Lu Aff., DE #32-1 ¶ 8.)

Lu attends many international conferences throughout the world, including locations within the United States. (Lu Aff., DE #32-1 ¶ 3.) According to Lou, for the duration of the Agreement (over ten years), he recalls Lu travelling to the United States approximately four or five times a year for two weeks at a time. (Lou Aff., DE #25 ¶ 27.) While Lou traveled to China at least once a year with clients, BOMC accommodated his alleged "financial difficulties" and reimbursed Lou for travel related expenses to China. (Lu Aff. DE #32-1 ¶¶ 5, 7; Agreement, DE #5, p. 7.)

*Analysis*

*Choice of Law*

The Seventh Circuit has held that, in a diversity action, a federal court must apply the choice of law rules of the forum state to determine the substantive law of the

case. *West Bend Mutual Ins. Co. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013). Indiana applies the most intimate contacts test to determine what state law should apply in contract actions. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Standard Fusee Corp.*, 940 N.E.2d 810, 813-14 (Ind. 2010) (discussing the court's adoption of the "most intimate contacts" test, which uses the factors from the Restatement (Second) of Conflict of Laws section 188 to determine choice of law issues). The following factors are considered under the test: (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id*. at 814. In general, even when multiple states are contemplated within an agreement, Indiana's choice of law jurisprudence favors applying the law of the state with the most intimate contacts to the entirety of the contract. *Id*. at 815.

Under Indiana law, "[a] contract 'is deemed to have been made in the state where the last act necessary to make it a binding agreement takes place.'" *Id*. at 817, n. 6 (citing *W.H. Barber Co. v. Hughes*, 63 N.E.2d 417, 421 (Ind. 1945)). However, when a contract is made in one state but

its performance is intended to take place in another, the law of the state of performance applies. *Elkhart Sawmill Co. v. Skinner*, 42 N.E.2d 412, 414 (Ind. App. 1942). In this case, the Agreement was signed in Chicago, Illinois,[4] but it was contemplated that Interleda would be calling on and soliciting orders from customers located in Indiana and throughout the United States. Therefore, the place of contracting weighs in favor of applying Indiana law.

As to the place of negotiation, Indiana courts have noted that this factor "is of less importance when there is no one single place of negotiation and agreement, as, for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone." *Am. Emp'r Ins. Co. v. Coachmen Indus., Inc.*, 838 N.E.2d 1172, 1179 (Ind. Ct. App. 2005) (quoting Rest. 2d. of Conflicts § 188 cmt. e (1971)). Here, the Agreement was drafted in Indiana and forwarded via email to BOMC in China. According to Interleda, there were no corresponding negotiations over its terms; rather, it was simply signed by Lu when he arrived at the hotel in Chicago, Illinois. Because there was no single place of negotiation (and

---

[4]   As noted previously, although BOMC alleges that the contract was signed in China, at this stage, Interleda is entitled to resolution in its favor of all disputed facts. See *Purdue Research Foundation*, 338 F.3d at 782. This resolution determination shall apply throughout the rest of the order.

because there is evidence that the Agreement was emailed from Indiana to China after it was drafted), the Court finds that this factor is not conclusive. See *Id.* at 1180.

The place of performance is the state where performance is to occur under the contract. Rest. 2d. of Conflicts § 188 cmt. e (1971). In the case at bar, also relevant to this factor is the Restatement's directive concerning contracts that are made primarily for the rendition of services:

> The validity of a contract for the rendition of services and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which the event the local law of the other state will be applied.

Rest. 2d. of Conflicts § 196 (1971). Here, the Agreement clearly contemplated the rendition of services: Interleda was contracted by BOMC to provide sales agent/representative services by soliciting business for the sale of BOMC's products to Interleda's exclusive customers. Although those services took place in several states, it was understood at the time of contracting that a substantial portion of those services would be accomplished

in Indiana, the state of Lou's residence and Interleda's incorporation and principal place of business. Lou spent extensive time soliciting sales for BOMC's products in Indiana, and BOMC subsequently sold those products to Indiana customers. For example, Carrier is located in Indianapolis, Indiana, and Lou provided sales representative services that grew the sales of BOMC's products to Carrier's facilities to more than $8 million annually. Lou also solicited business from Dometic, located in LaGrange, Indiana, that included sales of BOMC's products that were shipped directly to Indiana; those sales grew to $3 million annually. Accordingly, the Court finds that the place of performance factor weighs in favor of the application of Indiana law.

The location of the subject matter of the contract "deals with a specific physical thing, such as land or a chattel, or affords protection against a localized risk." Rest. 2d. of Conflicts § 188 cmt. e (1971). Here, as described above, Interleda solicited sales for BOMC. Therefore, the Court finds that this factor is indeterminate because the Agreement was for services rather than for goods.

The domicile, residence, nationality, place of incorporation and place of business of the parties are

considered in the last factor. This factor "assumes greater importance when combined with other contacts, such as that this state is the place of contracting or of performance or the place where the other party to the contract is domiciled or does business." Rest. 2d. of Conflicts § 188 cmt. e (1971). Interleda is incorporated and has its principal place of business in Indiana; Lou, Interleda's owner, president, and key sales representative is domiciled in Indiana. BOMC, on the other hand, is incorporated and has its principal place of business in Zhongshan, China. As noted above, a substantial portion of the performance (services) of the Agreement took place in Indiana, and BOMC clearly "did business" in Indiana. Therefore, the fact that one of the parties (Interleda) is also incorporated and has its place of business in Indiana sways this factor slightly in favor of applying Indiana law over Chinese law.

Overall, the most intimate contacts test weighs in favor of applying Indiana law. At the time the Agreement was signed, Indiana was contemplated to be the location where a predominant portion of the services/performance was to take place; furthermore, in executing the Agreement, Interleda actually did perform a substantial portion of the services in Indiana. BOMC did (and continues to do)

business in Indiana.  Indiana is also the location where Interleda is incorporated and principally does business. Accordingly, Indiana law shall be applied.

*Personal Jurisdiction*

BOMC requests dismissal of the Amended Complaint based on a lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  "A federal district court sitting in a diversity case has personal jurisdiction over a non-consenting, nonresident defendant if a court of the state in which the district court sits would have personal jurisdiction." *Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1216 (7th Cir. 1990).  The inquiry into whether an Indiana court would have jurisdiction over these defendants has two parts. *Purdue Research Foundation,* 338 F.3d at 779.  First, the court must decide whether the Indiana long-arm statute subjects the defendants to *in personam* jurisdiction.  *Id.*  If so, then the court must determine whether the exercise of jurisdiction comports with federal due process requirements.  *Id.*

Indiana's long-arm statute provides, in relevant part, that:

> Any person or organization that is a nonresident
> of this state, a resident of this state who has
> left the state, or a person whose residence is

unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

> (1) doing any business in this state;

> . . .

> (4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state;

> . . .

In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States.

Ind. Tr. R. 4.4(A). Because the Indiana long arm statute extends the jurisdictional limits of a state or federal court sitting in Indiana to those deemed permissible under the due process clause of the Fourteenth Amendment, such court may exercise personal jurisdiction over a nonresident defendant if the defendant's contacts with the state are deemed sufficient. *Wallace v. Herron*, 778 F.2d 391, 393 (7th Cir. 1985).

With regard to the due process analysis, "[d]ue process requirements are satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has certain minimum contacts with [the forum] such that the maintenance of the suit does not

offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (internal quotation marks and citation omitted). A court has specific personal jurisdiction over a nonresident defendant when the controversy "is related to or 'arises out of' [the] defendant's contacts with the forum." *Id.* at 414 (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). A court may also exercise personal jurisdiction over a defendant in any action, even if that action "does not arise out of or relate to the [defendant's] activities in the forum [s]tate," where the defendant has sufficient, continuous, and systematic general contacts with the particular forum state. *Id.* at 414–16. Overall, the defendants' "conduct and connection with [the forum state] must be such that [it] should reasonably anticipate being subject to the jurisdiction of [that state's] court." *Wallace*, 778 F.2d at 393–94 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). In other words, personal jurisdiction within that forum must be foreseeable. *Purdue Research Foundation,* 338 F.3d at 780.

Here, BOMC is a nonresident from Zhongshan, China and Interleda is a resident of Indiana. The Court has personal jurisdiction over BOMC if it satisfies the state's long-arm

statute, Indiana Trial Rule 4.4(A), and comports with federal due process requirements. Indiana's long-arm statute is satisfied in several respects.[5] First, BOMC is "doing . . . business in this state." Ind. Tr. R. 4.4(A). BOMC sells and ships millions of dollars' worth of its products into Indiana each year and distributes them to customers in Indiana. Second, BOMC "supplied or contracted to supply services rendered . . . in this state." Ind. Tr. R. 4.4(A). In the Agreement, BOMC contracted to obtain Interleda's services as a sales agent/representative to solicit sales of its products to customers throughout Indiana and beyond. BOMC was aware (and the Agreement itself states) that Interleda's principal place of business was in Indiana, and the execution of the Agreement led to services that were rendered, in substantial part, in Indiana. Therefore, Indiana's long-arm statute provides personal jurisdiction over BOMC.

As to the federal due process requirements, even assuming *arguendo* that general jurisdiction has not been established, specific jurisdiction does exist because Interleda's claims are related to, and arose out of, BOMC's

---

[5]   The Court notes that, as pointed out by the parties, it is not technically necessary to determine whether the long-arm statute is satisfied because the inquiry essentially collapses into a determination of whether the exercise of personal jurisdiction is consistent with the due process clause of the Fourteenth Amendment. See *Elayyan v. Sol Melia, SA*, 571 F.Supp.2d 886, 894 (N.D. Ind. 2008).

contacts with Interleda in Indiana. As noted above, BOMC deliberately entered into the Agreement with Interleda, an Indiana corporation, to solicit sales of its products throughout Indiana and beyond. The original customer list in Schedule A that was attached to the Agreement included an Indiana company, Dometic, that, at one point, provided millions of dollars in annual sales for BOMC via Interleda's efforts. Furthermore, another Indiana company, Carrier, was later added to the customer list, and Interleda also delivered millions of dollars of sales of BOMC's products to Carrier. The parties' contractual relationship resulted in products solicited by Interleda and sold by BOMC being shipped from overseas to a warehouse located in Indianapolis, Indiana, and then being distributed to facilities in Indiana and throughout North America on an ongoing basis. The termination of the services relationship and the resultant disputed unpaid sales commissions form the basis of the lawsuit. Accordingly, the Court finds that BOMC purposefully availed itself of the privilege of conducting activities in Indiana and, as such, should reasonably and foreseeably have anticipated being haled into court in this state.[6]

---

[6]   BOMC also argues that, even if sufficient minimum contacts exist, the exercise of personal jurisdiction here does not comport with fair play and substantial justice. (See DE #32, pp. 24-25.) The Court

*Venue*

BOMC next seeks dismissal of the Amended Complaint based on improper venue under Federal Rule of Civil Procedure 12(b)(3). Venue is governed by 28 U.S.C. section 1391. Under the venue statute, a civil action is proper in any judicial district where the defendant is subject to the court's personal jurisdiction regarding the action. 28 U.S.C. § 1391 (b)(3). In addition, the venue statute provides, in relevant part:

> Residency of corporations in States with multiple districts. -- For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391 (d). In general, a pleading must only contain short and plain statement of the grounds for the court's jurisdiction to adequately state a claim for relief. Fed. R. Civ. P. 8(a)(1).

---

agrees with BOMC that these factors are similar to the ones that will be considered in the Court's *forum non conveniens* analysis, and therefore, this argument will be addressed below.

BOMC argues that Interleda did not meet its burden of proving why venue in this Court is proper. In response, Interleda contends that venue is proper because this Court has personal jurisdiction over BOMC, a foreign corporation. BOMC has not submitted a reply as to this specific issue.

The Court agrees with Interleda that venue is proper because BOMC is subject to personal jurisdiction in Indiana, as described above. Specifically, venue is appropriate in the Northern District of Indiana because, if the Northern District of Indiana were a separate state, the contacts in this District would sufficiently create personal jurisdiction. Interleda is a Fort Wayne, Indiana corporation, which is located in the Northern District of Indiana. One of Interleda's clients and BOMC's customers mentioned in Schedule A of the Agreement, Dometic, is located in LaGrange, Indiana, which is also in this District. Pursuant to the Agreement, Interleda solicited business from Dometic that included sales of BOMC's that grew to $3 million annually by 2006. These contacts sufficiently provide for personal jurisdiction in the Northern District of Indiana, and venue is therefore proper.[7]

---

[7] BOMC argues that the Amended Complaint is inadequate because Interleda listed mere conclusory allegations as related to venue. However, the Amended Complaint provides that:

*Forum Non Conveniens*

BOMC also asserts that dismissal is warranted based on the doctrine of *forum non conveniens*. Under this common law doctrine, trial courts have the option to dismiss a suit where "it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997). This determination is left to the sound discretion of the trial court. *Id.* When an alternative forum exists, and when trying the case in the original forum would "establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems," dismissal is appropriate. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429-430 (2007) (ellipses omitted). The non-moving party has the burden of establishing that dismissal based on a

_____

1. Plaintiff, Interleda Company, is an Indiana corporation with its principal place of business located in Fort Wayne, Indiana. 2. Defendant, Zhongshan Broad-Ocean Motor Co., Ltd., is a corporation organized and existing under the laws of China, with its principal place of business located in Zhongshan, China. 3. Defendant conducts business in the United States, and more particularly in the Northern District of Indiana.

Because Federal Rule of Civil Procedure 8(a)(1) only requires a short and plain statement for purposes of venue, these factual statements are adequate to satisfy the federal pleading standard as related to venue.

*forum non conveniens* theory is warranted.  *Pyrenee, Ltd. v. Wocom Commodities, Ltd.*, 984 F.Supp. 1148, 1161 (N.D. Ill. 1997).

An alternative forum is available if each party is within the forum's jurisdiction and is amenable to process. *Kamel*, 108 F.3d at 803.  An alternative forum is adequate if the parties will be treated fairly and will not be divested of all remedies.  *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).  Once an available and adequate alternative forum is established, the defendant must also demonstrate that private and public interest factors weigh in favor of the foreign forum.  *Kamel*, 108 F.3d at 803.

> The factors pertaining to the private interests
> of the litigants include the relative ease of
> access to sources of proof; availability of
> compulsory process for the attendance of
> unwilling witnesses; the cost of obtaining the
> attendance of willing witnesses; the possibility
> of viewing the premises, if necessary; and all
> other practical problems that make trial of a
> case easy, efficient and economical.  The public
> factors include the administrative difficulties
> stemming from court congestion; the local
> interest in having localized disputes decided at
> home; the interest in having the trial of a
> diversity case in a forum that is at home with
> the law that must govern the action; the
> avoidance of unnecessary problems in conflicts of
> laws or in the application of foreign law; and
> the unfairness of burdening citizens in an
> unrelated forum with jury duty.

*Id.* (citations omitted).  It is reasonable to assume that the plaintiff's choice of forum is convenient when he chooses his home forum.  *Piper Aircraft Co.,* 454 U.S. at 255-56.  Overall, "a plaintiff's choice of forum should be disturbed only if the balance of public and private interest factors strongly favors the defendant."  *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008).

Here, even assuming *arguendo* that China is an available and adequate alternative forum, the public and private factors do not weigh in favor of dismissal.  Perhaps the most important public factors weighing in favor of the current forum are related to the law itself.  As described above, it is clear that Indiana law applies to Interleda's claims.  While BOMC spends several pages of its reply brief arguing that China's contract law is remarkably similar to Indiana's contract law, it completely ignores the fact that one of Interleda's two claims is based upon a violation of the Indiana Wholesale Sales Representative Commission Act.  The Act requires certain businesses to pay their commissioned wholesale sales agents all accrued commissions within fourteen days of terminating the principal-agent relationship.  Ind. Code § 24-4-7-5(a) (2007).  "A principal who in bad faith fails to comply" with that requirement "shall be liable, in a civil action

brought by the sales representative, for exemplary damages in an amount no more than three (3) times the sum of the commissions owed to the sales representative." Ind. Code § 24-4-7-5(b) (2007). To that specific end, BOMC provides no evidence or argument that a Chinese trial court would be more at home with the law that must govern at least part of this action than this Court is. Furthermore, it is clear that the state of Indiana has a compelling interest in protecting the commissions of its sales representatives --- it created the Act specifically to address that issue. It is therefore reasonable to infer that the United States, specifically Indiana, has an obvious stake in deciding the outcome of a dispute related to a foreign corporation's solicitation of new business via a local sales representative at home in its own forum. Trying a diversity case such as this in a federal court located in Indiana would avoid unnecessary problems in conflicts of laws or the application of foreign law. While China does have an interest in policing its companies as BOMC notes, that interest is clearly outweighed by this forum's interests as described above.[89] Thus, the public factors do

---

[8]   BOMC also states the following facts in support of its claim that China has an interest in these proceedings: Lou approached BOMC in China, the Agreement was negotiated and signed in China, all operations of the Agreement were performed in China, and the payments made pursuant to the Agreement were from financial institutions in China and

not weigh in favor of dismissal on the grounds of *forum non
conveniens*.

Nor, for that matter, do the private factors. The
claims in this case involve breach of a sales
representative contract and the resultant disputed sales
commissions. The bulk of the evidence and testimony will
center around Lu, Lou, and Lou's sales interactions with
his key customers in the United States, two of whom have
been specifically identified as Indiana corporations.
Whether or not Lou had "authority to bind" those non-party
customers to any purchase order agreements, as BOMC argues,
is irrelevant to the fact that Interleda may wish to call
them as witnesses pertaining to Lou's sales representative
duties. Similarly, the fact that any subsequent
operational issues related to the purchase orders may have

Hong Kong. (See DE #32, p. 16; see also Lu Aff., DE #32-1 ¶¶ 2, 5, 8.)
However, Interleda disputes these statements via Lou's affidavit, and,
as previously addressed, for the purposes of the instant motion only,
Interlada's factual allegations must be taken as true where such a
dispute exists.

[9]   The parties present no evidence or argument related to court
congestion in China, and this Court is without knowledge of any
administrative difficulties that Chinese courts may face; the Court
itself does know, however, that it does not face any particular
administrative difficulties related to court congestion at this time.
Therefore, this public interest factor remains neutral. Finally, while
BOMC states (verbatim) that "there is great doubt that a Indiana jury
would related to this alleged dispute in any meaningful way as to enter
a judgment on the merits," the Court sees no reason to conclude that
pressing jurors into service on a case related to the alleged breach of
contract and unpaid sales commissions of one of its own citizens would
be unduly burdensome to Indiana residents. Similarly, pressing Chinese
citizens into jury duty service on a case that involves a Chinese
corporation would not be unfair or burdensome either. Therefore, this
factor is neutral as well.

been addressed by BOMC in China does not negate the fact that Lou's interactions with those customers occurred in the United States and are directly relevant to Interleda's duties under the terms of the Agreement. These potentially unwilling, non-party customer witnesses are located primarily in Indiana and throughout the United States.[10] As Interleda points out, these witnesses can be subpoenaed to appear for depositions and/or trial in this forum via the Federal Rules of Civil Procedure. BOMC has not specifically identified any Chinese legal process that would similarly compel testimony from these customers. Thus, this factor does not weigh in favor of dismissal.[11]

---

[10] The only potential unwilling witnesses that BOMC identifies are "foreign banking officials" from China and Hong Kong. Lou's commission payments originated from these banks. (See Lu Aff., DE #32-1 ¶ 8.) However, to the extent that these officials will be needed to authenticate banking records, the same can be said of banking officials from Interleda's bank, Wells Fargo located in Fort Wayne Indiana, where Lou's commission payments were transferred to. (See Lou Aff., DE #25 ¶ 25.) Therefore, BOMC's "foreign banking officials" do not tip the scale in favor of dismissal.

[11] In its reply brief, BOMC cites to the *Clerides* case and mentions the Hague Convention for the first time, arguing that transnational discovery utilizing the Hague Convention would "impose an unfair burden" on BOMC and that litigating the case in Indiana would be "onerous, unpredictable, and inadequate" because of it. (See DE #32, pp. 13-14.) It also argues that "foreign banking officials" would be unlikely to willingly travel to the United States to authenticate financial records and that deposition evidence obtained via the Hague Convention would be an inadequate substitute for live trial testimony. (*Id* at 14.) For the reasons set forth in the previous footnote, this argument is unavailing. BOMC's vague references to undefined discovery difficulties is not convincing either, especially in light of the fact that BOMC made no mention of these Hague Convention problems in its original motion. The Court will not craft arguments or conduct research for the parties and will not study the contours of the Hague Convention based on a single footnote in a reply brief. Furthermore, the Court notes that BOMC's reliance on the *Clerides* case is not

The ease of access to sources of proof does not favor dismissal either. BOMC has not provided any indication that documents related to the Agreement, purchase orders, sales commission figures, and "accounting, engineering, and customer service" are outside of its own control or are otherwise being made unavailable. There is no reason to assume that this evidence would be burdensome or difficult for BOMC to produce here, as this is the type of evidence that is generally created, used, and stored in the regular course of one's business. BOMC's argument that the *Clerides* decision is controlling on this issue is unavailing because the relevant proof in that case was much more complex, difficult to obtain, and non-party specific than the typical business documents at issue in this case. See *Clerides*, 534 F.3d at 629 (most of the relevant proof involving an airline crash in Greece brought against Boeing, an American corporation, was located in Greece and Cyprus and included "evidence and witnesses related to [the unwilling, non-party airline] and the flight crew, the primary investigations of the crash and the wreckage, the

_____

persuasive. In *Clerides*, it had been established that compulsory process was available in Cypress and Greece, including for the key non-party entity that had definitely refused to produce its evidence or make its witnesses available in the United States. *Clerides*, 534 F.3d at 629-30. Here, the potential unwillingness of banking officials, who may possibly be needed to authenticate financial records, does not present the same type of issues described in *Clerides*.

post-mortem examinations of the decedents, and evidence and witnesses related to the families' pain and suffering). Here, as noted above, the sources of proof related to the non-party customers (key information that is not necessarily kept in the course of either party's business) will be easier to access if the litigation occurs in the United States. Thus, BOMC has not established that this factor weighs in favor of dismissal.

The cost of obtaining the attendance of willing witnesses may lean slightly towards BOMC but not enough to tip the scales in favor of dismissal. BOMC identifies several employees that it may wish to call as witnesses related to the negotiations and/or operation of the Agreement, namely Lily Xiao, Tiger Xu, Steve Sun, Barry Li, and Ping Lu. [12] Interleda, on the other hand, only specifically identifies Lou as a willing witness. On its face, BOMC's costs of transporting those witnesses to the United States would be greater than the cost of Lou alone travelling to China. However, as Interleda notes, the

---

[12]  In Lu's original, unsworn affidavit, he mentioned Haiming (Tiger?) Xu, Li (Lily?) Xiao, and Linyan Wang as individuals who understood the mechanics of the Agreement and indicated that these individuals would suffer hardships for various reasons by having to travel to the United States. (See Lu Aff., DE #32-1 ¶¶ 4-8.)  However, as noted above, this affidavit was unsworn, and it is unlikely that the information related to the employees' hardships was based on Lu's personal knowledge.  In fact, the actual affidavit of Linyan Wang, that was submitted with BOMC's reply brief, does not mention any sort of travel hardship whatsoever. (See Wang Aff., DE #32-1.)

record contains evidence that Lu himself travels to the United States multiple times throughout the year for various business conventions, while all of Lou's travel related expenses to China were paid for by BOMC. Lu also acknowledged in his affidavit that Lou was having financial difficulties. Thus, while the costs may be slightly greater for BOMC to travel to the United States, this factor does not weigh heavily in favor of dismissal. Furthermore, neither side goes into detail regarding the documentary evidence that will need to be transported back and forth. The Court is not convinced that the related costs would be prohibitive either way, as it is likely that such relevant documentary evidence would be typical business documents related to sales and purchase agreements, and there is no reason to conclude at this point that such evidence would be overwhelmingly voluminous. As such, the cost of obtaining the attendance of willing witnesses and transporting evidence to this forum does not, by itself, warrant dismissal.

Finally, as to all other practical problems that make trial of a case easy, efficient and economical, BOMC states that a judgment obtained in the United States would be "burdensome and uncertain for all parties involved." Citing to China's Civil Procedure Law, BOMC notes that "if

the application or request contradicts the primary principles of the law of People's Republic of China or violates State sovereignty, security and social and public interest of the country, the people's court shall not recognize and execute it." (See DE #32, pp. 14-15.) BOMC argues, without any analysis or explanation whatsoever, that there is a "real possibility" that this Court's findings would be considered contradictory to Chinese law. (*Id.* at 15.) The Court finds this unsupported allegation curious in light of the fact that BOMC spent several pages of its reply brief arguing that Chinese law was nearly identical to Indiana law as related to this matter. In any event, BOMC has not shown that there are practical problems that weigh in favor of dismissal.

After considering and balancing all of the relevant public and private factors in this case, the Court finds that, in sum, these factors do not strongly favor BOMC. As such, the Court finds that trying the case in this forum is not overly vexatious and oppressive to BOMC out of all proportion to Interleda's convenience, and dismissal is not warranted under the doctrine of *forum non conveniens*.

*Federal Rules of Civil Procedure 12(e) & 9(b)*

In Count II of its Amended Complaint, Interleda has alleged that BOMC violated the Act.[13]   BOMC has moved for dismissal of Count II based on Federal Rules of Civil Procedure 12(e) and 9(b).  Under Rule 12(e):

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed. R. Civ. P. 12(e).  In the alternative, BOMC also seeks dismissal based on Federal Rule of Civil Procedure 9(b).  Rule 9(b) provides that when a party alleges fraud or mistake, they must state with particularity the circumstances constituting fraud or mistake, but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

---

[13]   As noted above, the Act requires certain businesses to pay their commissioned wholesale sales agents all accrued commissions within fourteen days of terminating the principal-agent relationship.  Ind. Code § 24-4-7-5(a) (2007).  "A principal who in bad faith fails to comply" with that requirement "shall be liable, in a civil action brought by the sales representative, for exemplary damages in an amount no more than three (3) times the sum of the commissions owed to the sales representative."  Ind. Code § 24-4-7-5(b) (2007).

In its motion, BOMC has specifically requested dismissal rather than access to a more definite statement pursuant to Rule 12(e), and this is procedurally improper. In order for relief in the form of dismissal to be granted pursuant to Rule 12(e), BOMC must first file a motion requesting a more definite statement. If the Court were to grant that motion, and Interleda were to fail to provide a more definite statement as ordered by the Court, then dismissal of the claim would be a potential available remedy. However, BOMC has not appropriately moved for a more definite statement, and, therefore, dismissal under Rule 12(e) is inappropriate.

In addition, dismissal under Federal Rule of Civil Procedure 9(b) is not warranted. Interleda need not allege the specifics of when, how, and for how much BOMC acted in bad faith because a violation of the Act does not necessarily involve fraud or mistake. Under Rule 9(b), only claims regarding fraud or mistake must meet a heightened pleading standard; "malice, intent, knowledge, and other conditions of a person's mind" need only be alleged generally. The Amended Complaint alleges that there was a contractual sales representative/principal relationship between the parties, that the Agreement was breached when BOMC terminated the relationship prior to its

contractual expiration, that BOMC failed to pay Lou his commissions, and that BOMC did so in bad faith. These facts are sufficient to state a claim under the Act that is plausible on its face and satisfies the general pleading requirements. See Fed. R. Civ. P. 8; *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009).


<u>CONCLUSION</u>

For the reasons set forth above, "Defendant's Motion and Memorandum of Law to Dismiss Plaintiff's Complaint on the Grounds of Lack of Personal Jurisdiction, Improper Venue, Forum Non Conveniens, Failure to State a Claim, and More Definite Statement," filed by Defendant, Zhongshan Broad-Ocean Motor Co., Ltd., on April 30, 2014 (DE #14), is **DENIED**.


**DATED:  March 24, 2015**          **/s/ RUDY LOZANO, Judge**
                                    **United States District Court**